# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ViX SWIMWEAR, INC., | CASE NO. 14cv1113-GPC(NLS) |
|---|---|
| Plaintiff, | **ORDER FOLLOWING ORDER TO SHOW CAUSE; GRANTING PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT** |
| vs. | |
| SBC CLOTHING, INC., | |
| Defendant. | |

Before the Court is Plaintiff's response to order to show cause filed by the Court on June 8, 2015 regarding why the matter should not be dismissed for lack subject matter jurisdiction and personal jurisdiction. In its response, Plaintiff also renews its motion for default judgment. Based on the reasoning below, the Court concludes it has subject matter jurisdiction over the case and personal jurisdiction over Defendant and GRANTS Plaintiff's renewed motion for default judgment.

## Background

On May 1, 2014, Plaintiff ViX Swimwear, Inc. ("Plaintiff" or "ViX") filed a complaint against Defendant SBC Clothing, Inc. ("Defendant" or "SBC") based on SBC's failure to pay on a contract. (Dkt. No. 1.) An amended complaint was filed on October 3, 2014 alleging causes of action for breach of contract, account stated, reasonable value of services, open book account, and sought declaratory relief. (Dkt. No. 3.) On January 30, 2015, Plaintiff filed a motion for default judgment against

Defendant seeking judgment in the amount of $39,243.42 plus interest of $2,762.75, and a declaration of rights and obligations under the contract. (Dkt. No. 10.) On February 19, 2015, the Court denied Plaintiff's motion for default judgment for Plaintiff's failure to properly serve the defendants and directed the Clerk of Court to strike the Clerk's entry of default. (Dkt. No. 11.) On March 27, 2015, Plaintiff filed a certificate of service regarding service of the complaint and summons on Defendant pursuant to the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). (Dkt. No. 12.) On April 3, 2015, Plaintiff filed a request for entry of default. (Dkt. No. 14.) Default was entered on April 6, 2015. (Dkt. No. 15.) On May 6, 2015, Plaintiff filed another motion for default judgment. (Dkt. No. 16.) On June 8, 2015, the Court denied Plaintiff's motion for default judgment and set an order to show cause hearing why the case should not be dismissed for lack of subject matter jurisdiction and lack of personal jurisdiction. (Dkt. No. 18.) On June 17, 2015, Plaintiff filed a response and asks the Court to grant default judgment which the Court construes as a renewed motion for default judgment. (Dkt. Nos. 19, 20.) Defendant has not yet appeared in the case.

## Factual Background

According to the amended complaint, Plaintiff manufactures and sells women's swimwear. (Dkt. No. 3, FAC ¶ 3.) Defendant is a distributor of clothing in Canada. (Id. ¶ 4.) Around October 2012, Plaintiff and Defendant entered into a written contract where Plaintiff appointed Defendant to be an authorized distributor of Plaintiff's products within Canada. (Id. ¶ 6; Ex. 1.) The agreement was effective from October 10, 2012 and was to expire on its own terms and without notice on April 1, 2013 unless terminated earlier by mutual agreement or by Plaintiff with 10 days written notice. (Id. ¶ 7.) "At the expiration of the term the Parties may only extend the term by execution of a new written agreement." (Id. ¶ 13.) On April 18, 2014, Plaintiff terminated the contract and agreed to honor all pending orders. (Id. ¶ 8.) Defendant demanded Plaintiff to continue performing the contract for future orders. (Id. ¶ 9.) Plaintiff

asserts that Defendant breached the contract by failing to pay for services and materials rendered to it under the contract. (Id. ¶ 16.)

## Discussion

**A.     Subject Matter Jurisdiction**

Plaintiff asserts that the Court has jurisdiction over this case based on diversity jurisdiction. (Dkt. No. 3, FAC ¶ 1.) A district court has jurisdiction over a case if the suit is between citizens of a state and citizens of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(2).

In the Court's prior order, it concluded that based on the allegations in the amended complaint, the parties are diverse since Plaintiff is a corporation incorporated in California, and SBC is a foreign alien corporation organized under the laws of Canada. (Dkt. No. 18 at 4.) However, the Court concluded it did not have subject matter jurisdiction because on the face of the amended complaint[1], the allegations were not sufficient to establish that the amount in controversy exceeded $75,000, and it appeared legally certain that the amount in dispute was less than $75,000. (Dkt. No. 18 at 5-6.) The amended complaint only sought an amount of $39,000 as to the amount owed under the contract based on SBC's failure to pay for merchandise and no amounts were alleged as to the declaratory relief Plaintiff sought.

In a complaint seeking injunctive or declaratory relief, the amount in controversy is measured by the value of the "object of the litigation." Hunt v. Wash. State Apple Adver. Com'n, 432 U.S. 333, 347 (1977) (plaintiff seeking declaratory relief that statue was unconstitutional and value of the right is measured by the losses that will follow from the statute's enforcement). "The amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented." Jackson v. Am. Bar Ass'n, 538 F.2d 829, 831 (9th Cir.

---

[1] In its motion for default judgment, Plaintiff did not address whether the Court had subject matter jurisdiction over the case. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (on a motion for default judgment a "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.")

1976).  In determining the amount in controversy in such cases, the Ninth Circuit employs the "either viewpoint rule," which permits the "object of the litigation" to be valued either from the plaintiff's viewpoint or the defendant's viewpoint.  In re Ford Motor Co./Citibank, 264 F.3d 952, 959 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce").  "In other words, where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." Id. In applying the "either viewpoint" rule, courts look at the jurisdictional amount to the Plaintiff if the contract is enforceable or look at the jurisdictional amount if the contract is not enforceable.  Int'l Gateway Comm'n, Inc. v. Comm'n Telesystems Int'l, Inc., 922 F. Supp. 122, 125 (N.D. Ill. 1996).

In its response, Plaintiff asserts that its action for declaratory relief seeks to prevent injury it would suffer if it were subject to claims by SBC or was required to continue performing while SBC continued to default on payment under the Agreement. The amended complaint alleged that "SBC has demanded ViX continue performing the Contract for future orders." (Dkt. No. 3, FAC 9.)  According to emails submitted by ViX, SBC sought 12 months compensation as a result of ViX's termination, without cause, of the Agreement after almost 15 years.  (Dkt. No. 20-1 at 2.)  In looking at ViX's invoices to SBC from March 14, 2013 to April 18, 2014 (the date ViX terminated the Agreement), the invoices total $44,087.46. (Dkt. No. 16-3, Ex. 4.)  This amount equates to the injury to Plaintiff to be prevented in seeking declaratory relief.

In addition, the amended complaint seeks damages in the amount of  $39,000 which is the amount owed by Defendant under the contract for unpaid merchandise. (Dkt. No. 3, FAC ¶¶ 17, 21, 25, 30.)  Based on these two numbers, the amount in controversy meets the $75,000 amount in controversy.  Therefore, the Court concludes it has subject matter jurisdiction over the case.

**B.     Personal Jurisdiction**

While personal jurisdiction is a defense that may be asserted or waived by a party, when a court is addressing a motion for default judgment, "it may dismiss an action *sua sponte* for lack of personal jurisdiction." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Where there is no federal statute governing personal jurisdiction, courts look at the law of the state in which the court sits. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Therefore, California state law applies in this case. Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).

California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Accordingly, as long as the requirements of the Due Process Clause of the United States Constitution are satisfied, this Court's exercise of personal jurisdiction over Defendant is proper. See Panavision, 141 F.3d at 1320. California's long-arm jurisdictional statute is "coextensive with federal due process requirements." Mavrix Photo, Inc., 647 F.3d at 1223.

The Due Process Clause requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either "general" or "specific." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

When determining general jurisdiction of a foreign corporation, courts look at whether the defendant's affiliations with the State are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely

distinct from those activities.'" King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011) General jurisdiction "requires that the defendant's contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff alleges that the Court has general jurisdiction over SBC because it has had continuous and systematic business for over fifteen years. For fifteen years, SBC has entered into contracts and transaction in San Diego where it was responsible for shipping and paying all appropriate taxes for ViX's merchandise. (Dkt. No. 3, FAC, Ex. 1, General Terms ¶ 1) ("Distributor is responsible for shipping, duties, and taxes of the sample line.")

ViX also cites generally to the Agreement and alleges that SBC made payments to ViX for its merchandise in U.S. dollars to ViX's California accounts, SBC was required to provide notice of its pricing of ViX merchandise and return any confidential information to ViX in San Diego, and SBC agreed to indemnify ViX for claims that arise from SBC's conduct including claims made against ViX in San Diego, CA. However, these provisions do not support Plaintiff's allegations as they are all based on implication. The provisions in the Agreement make no reference to San Diego or California. Moreover, there is no forum selection clause and no mention of where or how these provisions were to be carried out. Therefore, Plaintiff's citation to the Agreement does not support its argument.

ViX also provides a page from SBC's website which states that it also owns and operates warehousing facilities in the United States. (Dkt. No. 19-2, Hubbard Decl., Ex. 2.) However, Defendant's contact must be with the forum state, not contacts with the United States. See Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014); see XL Specialty Ins. Co. v. Melexis GMBH, No. 07-1018(DRD), 2007 WL 3026683, at *3 (N.J. Oct. 16, 2007) (rejecting plaintiff's arguments that defendant parent corporation's operation of various subsidiaries in the United States and the defendant's application for United States patents established general personal jurisdiction over the defendant

1  because "[t]he plaintiff must show that the defendant maintains contacts with the forum
2  state, not simply with the United States.")

3    The only facts alleged and supported by the Agreement and an email from SBC,
4  is that for fifteen years, SBC entered into contracts and transactions with ViX in San
5  Diego where it was responsible for shipping and paying all appropriate taxes for ViX's
6  merchandise. (Dkt. No. 3, FAC, Ex. 1, General Terms ¶ 1.) There is no showing of
7  any physical presence by Defendant in California. Paying for shipping and paying
8  taxes do not establish that SBC is "essentially at home" in California as these contacts
9  are not akin to physical presence in California. See Bankcroft & Masters, Inc., 223
10 F.3d at 1086.

11   A defendant who is not subject to general jurisdiction may still be subject to
12 specific jurisdiction, based on claims related to its activities or contacts with the forum
13 state. Walden v. Riore, 134 S. Ct. 1115, 1121 (2014). The inquiry whether a forum
14 State may assert specific jurisdiction over a nonresident defendant "focuses on 'the
15 relationship among the defendant, the forum, and the litigation.'" Id. at 1121. The fact
16 that a nonresident enters the forum state to execute or perform a contract with a
17 resident does not per se establish "minimum contacts." Gray & Co. v. Firstenberg
18 Machinery Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990) (citing Burger King Corp. v.
19 Rudzewicz, 471 U.S. 462, 478 (1985)). Courts must also evaluate "prior negotiations
20 and contemplated future consequences, along with the terms of the contract and the
21 parties' actual course of dealing" to determine whether the "defendant purposefully
22 established minimum contacts within the forum." Burger King Corp., 471 U.S. at 479.
23 The focus is on the nonresident defendant's conduct with the forum state, "that is,
24 whether the defendant deliberately engaged in significant activities within a state or
25 created continuing obligations with residents of the forum." Diamond Crystal Brands,
26 Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1268 (11th Cir. 2010) (citing Burger
27 King Corp., 471 U.S. at 480).

28   In Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. 2004), the

Ninth Circuit established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. at 802 (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort." Id. The plaintiff bears the burden of satisfying the first two prongs and then the burden shifts to the defendant to make a "compelling case" that the third part has not been met. Id. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted).

Here, in its response, ViX argues that the Court has specific jurisdiction over SBC because it purposely availed itself to this forum when it entered into the Agreement which resulted in dozens of transactions with ViX, a resident of the forum state. In addition, SBC was responsible for shipping, duties and taxes of the purchased products over fifteen years. (Dkt. No. 3, Ex. 1, General Terms ¶ 1.)

Similar to this case, the case of Diamond Crystal Brands, Inc. involved a "forum seller's effort to sue a nonresident buyer in the seller's home forum for breach of contract." 593 F.3d at 1268. The Eleventh Circuit noted that nonresident purchasers may be subject to jurisdiction in the seller's forum where there are further contacts or plus factors that connect the defendant to the jurisdiction. Id. at 1268. Such factors that courts have considered are, *inter alia*, a defendant's initiating a contractual relationship, establishing a relationship by placing multiple orders, negotiating the contract via telefaxes or calls with the plaintiff. Id. at 1268-69. The Court concludes Defendant purposefully availed itself to California by engaging in a continual business

relationship with Plaintiff by purchasing Plaintiff's products for almost fifteen years. See Air Prods. and Controls, Inc. v. Safetech Intern'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007) ("[T]he parties did not engage in a one-time transaction, but in a continuing business relationship that lasted many years. . . . Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment.").

As to the second factor, the causes of action in the amended complaint arise from the Agreement and the ongoing business relationship between ViX and SBC. As to whether the exercise of jurisdiction comports with fair play and substantial justice, if defendant has purposefully directed its activities in California, then "personal jurisdiction is presumptively reasonable." Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir. 1990). The burden is on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King Corp., 471 U.S. at 477.) Here, Defendant has not appeared or responded to Plaintiff's motion. Accordingly, the Court concludes that personal jurisdiction over SBC is reasonable since Defendant has purposefully availed itself in California.

In sum, the Court concludes that it has personal jurisdiction over Defendant. The Court now proceeds to rule on Plaintiff's renewed motion for default judgment.

**C.    Motion for Default Judgment**

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Plaintiff filed a request for entry of default and default was entered on April 6, 2015. (Dkt. Nos. 14, 15.) After default is properly entered, a party seeking relief other than a sum certain must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b). The district court has discretion to enter default judgment. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); Taylor Made Golf Co. v. Castern Sports, Ltd., 175 F.R.D. 658, 660 (S.D. Cal. 1997) (Brewster, J.) (citing Lau Ah Yew v. Dulles, 236 F.2d 415, 416

(9th Cir. 1956)).

The Ninth Circuit looks to seven factors to assist the court in determining whether default judgment is appropriate. The seven factors are:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of the plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and;
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977); see Fed. R. Civ. P. 8(b)(6). Allegations of damages must be proven. Id. The decision to grant or deny default judgment is within the discretion of the district court. Eitel, 782 F.2d at 1471.

"Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or detailed affidavits), judgment by default may be entered without a damages hearing." Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008) (citing Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983)).

**D.     Eitel Factors**

   **1.     Prejudice to the Plaintiff**

Under the first factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies default judgment. See Eitel, 782 F.2d at 1471. Since default judgment is the only means to compensate Plaintiff, denial of Plaintiff's request for default judgment will effectively immunize Defendant from liability and leave Plaintiff without redress. See Amini Innovation Corp. v. KITY Int'l Mktg., 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (finding prejudice to plaintiff where "a default judgment is the only means available for compensating [p]laintiff for [d]efendants'

1  violations"); Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012) (same); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010) (same).  Plaintiff has provided goods and materials to SBC and has not received payment for those shipments.  Because failure to enter default judgment for Plaintiff would prejudice him, this factor weighs strongly in favor of default judgment.

### 2. Merits of the Case and Sufficiency of the Complaint

Under the second and third factors, the Court must examine whether Plaintiff has pled facts sufficient to establish and succeed on its claims.  See Eitel, 782 F.2d at 1471.

#### i. Declaratory Relief

Plaintiff's first cause of action is for declaratory relief pursuant to California Code of Civil Procedure section 1060.

Section 1060 confers standing on "[a]ny person interested under a written instrument . . . . or under a contract" to bring an action for declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties."  Cal. Civ. Proc. Code § 1060.  For declaratory relief, "an actual, present controversy must be pleaded specifically" and "the facts of the respective claims concerning the [underlying] subject must be given."  City of Cotati v. Cashman, 29 Cal.4th 69, 80 (2002) (citation omitted); see also Foster v. Masters Pontiac Co., 158 Cal. App. 2d 481, 488 (1958) (holding that the actual controversy element "is met by allegations showing a controversy respecting the rights of parties to a written instrument, accompanied by a request that these rights be determined and declared").

Here, the amended complaint alleges that both parties entered into a written contract. (Dkt. No. 3, FAC ¶ 6.)  ViX performed its obligation, then terminated the Contract pursuant to its terms, and agreed to honor all pending orders. (Id., FAC ¶ 8.) SBC demanded ViX continue to perform under the Contract for future orders. (Id., FAC ¶ 9.) Plaintiff asserts that an actual controversy has arisen and now exists between ViX and SBC regarding their rights and obligations under the Contract, which also

includes the effective date of termination and ViX's obligation to honor product orders of SBC after the date of termination. (Id., FAC ¶ 11.) ViX contends its obligations under the Contract ceased on April 18, 2014, when notice was given to SBC. (Id., FAC ¶ 12.) Looking at the allegations of the amended complaint and taking them as true, Plaintiff has sufficiently demonstrated it is entitled to declaratory relief.

### ii. Breach of Contract

Plaintiff's second cause of action alleges Defendant breached the Agreement by failing to pay Plaintiff $39,243.42 worth of merchandise. A "cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

The Court finds Plaintiff has sufficiently pled and demonstrated each of these elements. Plaintiff alleges that: (1) Plaintiff and Defendant entered into a written contract, (Dkt. No. 3, FAC ¶ 6; Ex. 1); (2) Plaintiff performed the Agreement by providing products to SBC, (id., FAC ¶ 8); (3) Plaintiff further alleges breach by arguing SBC failed to pay in full for the goods and materials provided by ViX under the Agreement, (id., FAC ¶ 16); and (4) Plaintiff has been damaged in the amount of $39,243.43 of services and materials provided to SBC. (Id., FAC ¶ 16.) Taking these allegations as true, the Court finds Plaintiff has established it claim for breach of contract.

### iii. Account Stated

Plaintiff's third cause of action is for account stated. "The essential elements of an account stated are: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." Zinn v. Fred R. Bright Co., 271 Cal. App. 2d 597, 600 (1969).

Plaintiff asserts that SBC failed to pay ViX for materials rendered to SBC under the Contract. (Dkt. No. 3, FAC ¶ 16.) ViX and SBC stated an account, confirmed by invoices, whereby they agreed that SBC was indebted to ViX for the clothing and merchandise supplied by ViX to SBC. (Id., FAC ¶ 19.) SBC has not paid the amount owed under the account in full. (Id., FAC ¶ 20.) Lastly, SBC owes the unpaid balance of at least $39,000.00 for clothing and merchandise. (Id., FAC ¶ 21.) Taking these allegations as true, the Court finds Plaintiff has established it claim for breach of contract

          **iv.**    **Reasonable Value of Services**

Plaintiff's fourth cause of action is for reasonable value of services. "To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." Ochs v. PacifiCare of California, 115 Cal. App. 4th 782, 794 (2004) (citing Day v. Alta Bates Medical Center, 98 Cal. App. 243, 248 (2002)).

According to the amended complaint, SBC requested ViX provide merchandise to SBC by placing orders for such goods. (Dkt. No. 3, FAC ¶¶ 6, 9, 23.) ViX provided clothing and merchandise to SBC as requested. (Id., FAC ¶¶ 8, 23.) SBC has not paid ViX for the clothing and merchandise. (Id., FAC ¶¶ 16, 24.) The reasonable value of the benefit to SBC is at least $39,000.00. (Id., FAC ¶ 25.) The Court concludes that Plaintiff has sufficiently demonstrated a cause of action for reasonable value of services.

          **v.**    **Open Book Account**

Plaintiff's fifth claim is for an open book account. A "book account" is defined as a "'detailed statement, kept in a book, in the nature of debit and credit, arising out of contract or some fiduciary relation.' It is, of course, necessary for the book to show against whom the charges are made. . . . It must also be made to appear in whose favor

the charges run." Joslin v. Gertz, 155 Cal. App. 2d 62, 65 (1957) (citations omitted). A book account cause of action "contains a statement of the debits and credits of the transactions involved completely enough to supply evidence from which it can be reasonably determined what amount is due to the claimant." Interstate Group Administrators, Inc. v. Cravens, Dargan & Co., 174 Cal. App. 3d 700, 708 (1985) (citation omitted). Moreover, it is called "open" because debtor has made some payment on the account with a balance due. Id.

The amended complaint alleges the ViX sold SBC goods at a discounted wholesale price numerous times. (Dkt. No. 3, FAC ¶¶ 6, 27.) ViX maintained a statement for the account of debits and credits involved in the transaction. (Id. ¶ 28.) SBC owed ViX the outstanding balance on the account. (Id., FAC ¶ 29.) Lastly, SBC owes the unpaid balance of at least $39,000.00. (Id., FAC ¶ 30.) The Court finds that Plaintiff has sufficiently alleged and demonstrated a cause of action for an open book account.

### 3. Sum of Money at Stake

Having found Plaintiff's causes of action sufficiently pled, the Court examines the amount at stake in relation to the seriousness of Defendant's conduct. See Eitel, 782 F.2d at 1471-72. "Default judgment is disfavored where the same [sic] of money at stake is too large or unreasonable in light of defendant's actions." J & J Sports Prods., Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009 WL 3416431, at *3 (S.D. Cal. Oct. 20, 2009) (Sammartino, J.) (quoting Truong Giang Corp. v. Twinstar Tea Corp., No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) (internal quotations omitted)). Here, Plaintiff seeks $39,243.43 plus pre-judgment interest of $3,741.00. Plaintiff has provided a detailed account summary providing the amount currently owed on each invoice. (Dkt. No. 16-3, Assef Decl., Ex. 3 at 21-22.) Plaintiff also provides copies of the invoices that were sent to SBC. (Id., Ex. 4.) Given that Defendant owed Plaintiff that amount under the Agreement, the amount Plaintiff seeks is reasonable in light of the allegations and the evidence presented. This factor

weighs in favor of default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

The fifth Eitel factor examines the likelihood of dispute between the parties regarding the material facts of the case. Eitel, 782 F.2d at 1471-72. "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Here, Plaintiff has set forth adequate allegations as to contract between Plaintiff and Defendant, and Defendant's subsequent breach of that Agreement. Plaintiff also provided a copy of the Agreement that contains the termination provision. (Dkt. No. 3, Am. Compl. Ex. 1.) Moreover, Plaintiff has provided a detailed account summary providing the amount currently owed on each invoice and provides copies of the invoices that were sent to SBC. (Dkt. No. 16-3, Assef Decl., Exs. 3, 4.) Meanwhile, Defendant has not responded to the complaint or any of Plaintiff's subsequent filings. The Court finds that Defendant is unlikely to appear now to contest this matter, and therefore, this favors entry of default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The sixth Eitel factor examines whether Defendant's failure to respond can be attributed to excusable neglect. See Eitel, 782 F.2d at 1472. This factor weighs in favor of entry of default judgment where the defendant was properly served. Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Defendant was served in this case according to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. (Dkt. No. 12.) Plaintiff has proffered sufficient evidence to show Defendant was aware of this litigation. Defendant's failure to appear and litigate this matter, therefore, is not likely based on excusable neglect. This factor weighs in favor of default judgment.

### 6. Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

The final Eitel factor examines whether the strong policy favoring deciding cases

on the merits prevents a court from entering default judgment. <u>Eitel</u>, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits when possible. <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. <u>Pepsico, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). As Defendant has failed to appear or respond in this matter, a decision on the merits is impossible. Accordingly, the Court is not precluded from entering default judgment against Defendant.

In sum, the <u>Eitel</u> factors weigh in favor of default judgment.

**E.   Damages**

Having determined that default judgment should be granted, the Court must next evaluate Plaintiff's request for relief, including the appropriate amount of damages to award. See <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Where a default judgment is granted, the relief granted "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); <u>Greenup v. Rodman</u>, 42 Cal. 3d 822, 824 (1986) ("In all default judgments, the demand sets a ceiling on recovery.").

The amended complaint seeks declaratory relief in the form of a judicial determination that ViX has satisfied its obligation under its Contract with SBC and the Contract was terminated on April 18, 2014. (Dkt. No. 3 at 6.) The amended complaint also seeks damages in the amount of $39,243.42 plus pre-judgment interest of $3,805.50 through May 6, 2015 pursuant to California Civil Code section 3289.[2]

As discussed above, Plaintiff has sufficiently demonstrated it is entitled to declaratory relief as there is an actual, present controversy concerning whether the contract was terminated on April 18, 2014. In addition, Plaintiff has pled all the causes

---

[2] "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach" Cal. Civ. Code 3289(b).

of action in the Complaint based on breach of the contract. The damages awarded pursuant to a breach of contract and related causes of action are compensatory in nature and should restore the plaintiff to the position he would have been in had the contract been performed. Cal. Civ. Code § 3300; Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 455 (1990). Moreover, Plaintiff is entitled to pre-judgment interest pursuant to Civil Code section 3289. Accordingly, the Court GRANTS Plaintiff's request for declaratory relief, compensatory damages, and pre-judgment interest.

## Conclusion

Based on the above, the Court concludes it has subject matter jurisdiction over the case and personal jurisdiction over Defendant. As such, the Court GRANTS Plaintiff's renewed motion for default judgment.

The Court declares that ViX has satisfied all of its obligations under its contract with SBC and the contract was terminated on April 18, 2014. ViX is awarded damages against SBC in the amount of $39,243.42 and pre-judgment interest in the amount of $3,805.50. The Clerk of Court shall enter judgment accordingly. The hearing set for **June 26, 2015** shall be vacated.

IT IS SO ORDERED.

DATED: June 24, 2015

HON. GONZALO P. CURIEL
United States District Judge